## Eby Estate

*Soren P. West,* for petitioner.

APPEL, *J.,* October 7, 1975—Clyde S. Eby died on October 8, 1974, at 9:15 p.m., following an automobile accident which had occurred earlier that evening at 7 o'clock. He was survived by a spouse, Nancy J. Eby, and three children, Clair, Janelle and Dawn, born respectively on October 22, 1967, July 9, 1969, and November 19, 1972. The spouse and children were occupants of the vehicle of which decedent was the operator. Each of them sustained injuries, which, as to some, were apparently superficial but as to others were of a more serious nature.

On October 17, 1974, letters of administration were granted to the spouse. On September 11, 1975, the Ephrata National Bank was appointed guardian of the estates of the three minor children.

On Friday, October 3, 1975, at 9 a.m., counsel for the administratrix informed the court of his intention to present the petition of the administratrix seeking leave to compromise wrongful death and survival actions and minors' claims. Later that morning, the petition was filed. A cursory inspection revealed that petitioner sought approval of the proposed settlement of the claims of the three minors. A guardian having previously been appointed, the court deemed that petitioner was not the appropriate party with respect to the compromise of the children's individual claims and this apparent insufficiency has now been resolved by the joinder of the guardian.

It appears that the operator of the automobile which struck the Eby vehicle was a 16-year-old boy whose vehicle crossed over into the lane of traffic of

the Eby car causing a head-on collision. As to the operator, there is insurance available with limits of $25,000 for each person and $50,000 total for each occurrence. The carrier has offered $25,000 re the survival and wrongful death claims pertaining to decedent and a total of $3,725 as to the claims of the spouse and the three children individually. Under the circumstances which have been related, it appears that the proposed offer should be accepted as far as the 16-year-old operator is concerned.

The problem which must be dealt with, however, is much more complex. It appears from the petition that there may be adequate basis on which to sustain claims against others. These include the physician who treated decedent after the accident, hospital personnel who ministered to him and the proprietor of a garage from which the boy's car had been purchased and to which it had been taken for servicing because it pulled to the left.

The administratrix has not brought suit on the other potential claims because she "does not desire to institute suit and involve herself and her family and the various potential named defendants in protracted litigation." Normally, we would not deem a mere "desire" as a basis on which to approve a settlement which would effectually bar other avenues of recovery which should be pursued. Our investigation of the matter has established, however, that the unstated basis of "desire" stems from the spouse's membership in the Mennonite Church. It is, therefore, immediately apparent that the desire is not a mere personal predilection against protracted litigation, but, on the contrary, is in the exercise of a tenet of the religious faith of which she is a member.

The statute of limitations would bar the bringing

of suit after October 7, 1975, therefore, there has been insufficient time to conduct a hearing on the petition. The little research that time has permitted suggests that the question which is before the court is without precedent.

The chapter on Judicial Notice in Henry on Pennsylvania Evidence commences at page 500 with the following:

"There are many matters, the existence, nature or truth of which the court will recognize without proof, on the theory that they are self evident or of such common knowledge as to render proof unnecessary, the rule being that the court will take notice of what ought to be and is generally known within the limits of its jurisdiction."

It is common knowledge that the Mennonites are one of the plain sects which have been of the fabric of Lancaster County and that members of the plain sects have consistently and determinedly avoided adversary proceedings before the courts. Their religious beliefs have encouraged the settlement of disputes and conflicts by means other than that of "going to law."

In view of these beliefs we are then confronted with the question of whether the court is required to give consideration only to the monetary circumstances affecting the minors who will participate in the proceeds from the survival and wrongful death claims, or whether the court may properly respect the desires of the spouse-mother to practice her religious beliefs and to bring up her children in the religion which is a part of her life.

In a scholarly discussion on religious freedom in Stark et al. Appeal, 72 D. & C. 168 (1950), Judge,

now President Judge, Ellenbogen, of the Court of Common Pleas of Allegheny County, pointed out that:

"The religious freedom guaranteed by our Federal and State Constitutions is the freedom to worship Almighty God according to the dictates of one's own conscience, and in exercising such worship to adopt such practices as one sees fit, or deems appropriate. Neither the State nor the Federal Government are permitted to dictate or influence religious doctrines, concepts, or practices."

He also pointed out that the concept of religious liberty has a double aspect in that it prohibits the enactment of laws respecting an establishment of religion and it safeguards the free exercise of the form of religion chosen by the individual.

In the present case, Mrs. Eby's exercise of the form of religion chosen by her requires that she not participate in adversary litigation. She has, therefore, concluded that the institution of suits for the recovery of damages to which she and her children may be entitled would not be consistent with the church oriented life in which she lives and in which she desires to rear her children.

We are aware that the failure to bring suit may result in monetary deprivation to the children. Notwithstanding this awareness, we have concluded that if the court were to refuse to approve the settlement which is in other respects acceptable, thereby, in effect, directing that suit be instituted, such refusal would be, in our opinion, an unwarranted interference with the freedom of religion. We are, therefore, entering an order approving the proposed settlement for the reasons set forth herein.